IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| HEATHER FELTS, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | [Removed from Jackson County |
| | ) | Circuit Court State Case No. |
| | ) | 1416-CV15112] |
| vs. | ) | |
| | ) | |
| MONSTER BEVERAGE CORPORATION; | ) | **JURY TRIAL DEMANDED** |
| a Delaware Corporation; MONSTER | ) | |
| ENERGY COMPANY, a Delaware | ) | |
| Corporation; McKEEVER ENTERPRISES, | ) | |
| INC.; and DOES 1-10, Inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI, WESTERN DIVISION:

PLEASE TAKE NOTICE that, in accordance with 28 U.S.C. §§ 1331, 1332, 1441, and 1446, Defendants Monster Beverage Corporation and Monster Energy Company hereby remove this civil action from the Circuit Court of Jackson County, Missouri at Kansas City to the United States District Court for the Western District of Missouri, Western Division.

1

## OVERVIEW

1. This is a product liability lawsuit. Heather Felts ("Plaintiff") has sued Monster Beverage Corporation and Monster Energy Company (collectively, "Monster") and McKeever Enterprises ("McKeever"), claiming that Monster is responsible for her husband's death on June 25, 2012. Plaintiff asserts claims for strict liability, negligence, fraudulent concealment, wrongful death, and violations of the Missouri Merchandising Practices Act ("MMPA"), all based on one, overarching allegation — that the Monster Energy drink Plaintiff's husband allegedly consumed was unsafe because it contains excessive levels of caffeine.[1]

2. Federal jurisdiction exists in this case for two reasons:

   a. Diversity jurisdiction exists under 28 U.S.C. § 1332 because Monster Beverage Corporation and Monster Energy Company are diverse defendants, and the amount in controversy exceeds $75,000.

   b. McKeever is a sham defendant Plaintiff fraudulently joined to defeat diversity. There is no reasonable basis in fact or law to support a claim against McKeever because (i) Plaintiff does not allege that McKeever sells Monster Energy drinks (*see* Petition ¶6), (ii) Plaintiff does not allege that McKeever sold Plaintiff's husband the Monster Energy drink at issue in this case, and (iii) even if Plaintiff had made those allegations, McKeever is subject to Missouri's Innocent Seller Statute (Mo. Rev. Stat. § 537.762). Under that statute, dismissal is proper if McKeever's potential liability is based entirely on its status as a seller, and another defendant is properly before the court from whom total recovery may be sought. As described in greater detail below, McKeever satisfies both requirements.

---

[1] This, despite the fact that Monster Energy drinks generally contain less than half the amount of caffeine per ounce than a Starbucks coffee.

c. Federal question jurisdiction exists under 28 U.S.C. § 1331 because the complaint presents a substantial federal question within the meaning of *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). Plaintiff claims that Monster "avoided meaningful regulation of its product by the U.S. Food and Drug Administration . . . [b]y classifying 'Monster Energy' as a 'dietary supplement,'" and that Monster Energy drinks are unsafe because they contain excessive caffeine and lack adequate labeling. (Petition ¶¶20, 22.)

"FDA has exclusive jurisdiction over the safety, and primary jurisdiction over the labels and labeling, of dietary supplements under the Food, Drug, and Cosmetic Act (FDCA)." *See Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403(r)(6) of the Federal Food, Drug, and Cosmetic Act*, available at http://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/dietarysupplements/ucm073200.htm. Because Plaintiff's claims arise from what are exclusively federal standards, they are "state law claim[s] [that] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Accordingly, to decide this case on the merits, the Court must resolve the scope and application of various *federal* safety and labeling requirements.

**PROCEDURAL HISTORY**

3. On June 25, 2014, Plaintiff filed a Petition in the Circuit Court of Jackson County, Missouri at Kansas City entitled *Heather Felts v. Monster Beverage Corporation, Monster Energy Company, McKeever Enterprises, Inc., and Does 1-10, Inclusive,* (Jackson County

3

Circuit Court Case No. 1416-CV15112). A copy of the Jackson County Circuit Court file that was served on Monster is attached hereto as **Exhibit A**, which includes copies of all process, pleadings (including the Petition), and orders that were served on Monster. Monster was served with a copy of the Petition on July 24, 2014.

4. Removal to this Court is proper under 28 U.S.C. §1441(a) because the Circuit Court of Jackson County, Missouri at Kansas City is geographically located within the Western District of Missouri, Western Division.

## TIMELINESS OF REMOVAL

5. This Notice of Removal is timely because Monster filed this Notice of Removal within 30 days of receiving the Petition. Monster was served with the Summons and Petition on July 24, 2014. This Notice of Removal is being filed on August 22, 2014.

## ALLEGATIONS OF THE COMPLAINT

6. Plaintiff contends that the "Monster Energy, Extra Strength with Nitrous Technology" is unsafe because it contains excessive amounts of caffeine, lacks sufficient information in its labeling, and fails to warn about a variety of alleged health risks. (Petition ¶¶ 15-25.) Plaintiff's Petition includes eight causes of action: (1) strict liability - design defect; (2) strict liability - failure to warn; (3) negligence - design, manufacture, and sale; (4) negligence - failure to warn; (5) fraudulent concealment; (6) violations of the Missouri Merchandising Practices Act ("MMPA"); (7) wrongful death; and (8) "aggravating circumstances." Plaintiff seeks "actual damages sustained as a result of the injury to Plaintiff" and "an award of aggravating circumstances" (*i.e.*, punitive damages).

7. Monster disputes and denies Plaintiff's allegations and believes the Petition lacks merit.

## REMOVAL BASED ON DIVERSITY JURISDICTION

8. This is an action over which this Court has original jurisdiction under 28 U.S.C. § 1332. This action may be removed under 28 U.S.C. § 1441 because the suit involves a controversy between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### This Suit Involves a Controversy Between Citizens of Different States

9. Plaintiff is a citizen of Missouri. (Petition ¶ 1.)

10. Defendant Monster Beverage Corporation is a Delaware corporation with its principal place of business in California. (Petition ¶ 4.) Accordingly, Defendant Monster Beverage Corporation is a citizen of Delaware and California within the meaning of 28 U.S.C. § 1332(c)(1).

11. Defendant Monster Energy Company is a Delaware corporation with its principal place of business in California. (Petition ¶ 5.) Accordingly, Defendant Monster Energy Company is a citizen of Delaware and California within the meaning of 28 U.S.C. §1332(c)(1).

12. Defendants DOES 1-10, Inclusive are sued under fictitious names. (Petition ¶ 7.) In determining whether diversity citizenship exists for removal purposes, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1).

13. Although the remaining Defendant, McKeever Enterprises, Inc., is a Missouri corporation with its principal place of business in Missouri (Petition ¶ 6), McKeever has been

5

fraudulently joined in order to defeat diversity jurisdiction. Accordingly, its citizenship should be ignored for purposes of determining diversity. *Reeb v.Wal-Mart Stores*, *Inc.*, 902 F.Supp.185 (E.D. Mo. 1995).

14. "A defendant's right to remove an action that could have been brought in the federal court system will not be defeated by collusive or fraudulent joinder of a non-diverse defendant." *Spears v. Bayer*, 2004 U.S. Dist. LEXIS 29732, *7 [citing *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983)]. "Joinder is fraudulent only where there is no reasonable basis in fact or colorable ground supporting the claim against the resident defendant[.]" *Richka Enters. v. Am. Fam. Mut. Ins. Co.*, 200 F. Supp. 2d 1049, 1051 (E.D. Mo. 2001) [quoting *Reeb v. Wal-Mart Stores, Inc.*, 902 F. Supp. 185, 188 (E.D. Mo. 1995)]. As explained below, McKeever has been fraudulently joined in this case because there is no reasonable basis in fact or law for recovery against McKeever.

15. Plaintiff brings the following causes of action against McKeever: (1) negligence - design, manufacture, sale; (2) negligence - failure to warn; (3) fraudulent concealment; (4) violations of the MMPA; (5) wrongful death; and (6) aggravating circumstances.

16. Plaintiff's allegations against McKeever fail both factually and legally. Factually, Plaintiff never alleges that McKeever even sold "Monster Energy, Extra Strength with Nitrous Technology," the sole beverage at issue here. (*See* Petition generally.) More importantly, Plaintiff never alleges that her husband purchased the "Monster Energy, Extra Strength with Nitrous Technology" that Plaintiff alleges caused his death. (*Id.*) Plaintiff's only specific allegation with respect to McKeever is in paragraph 6 of the Petition: "Defendant McKeever Enterprises, Inc. ('McKeever') is a Missouri corporation, with its principal place of business at 4216 S. Hocker Drive, Independence, Missouri, 64055. Defendant McKeever is a retailer of

6

energy drink products in the State of Missouri." (Petition ¶6.) Without an allegation that McKeever sold Plaintiff's husband the drink that allegedly caused the incident, Plaintiff cannot prevail under any theory of liability against McKeever.

17. Legally, *even if* Plaintiff made a specific allegation that McKeever sold the drink at issue to Plaintiff's husband, Plaintiff's claims still fail. McKeever has never developed, tested, manufactured, designed, or marketed Monster Energy drinks.[2] McKeever's only involvement— even assuming that Plaintiff had properly pled a viable claim against McKeever—is as a seller of the product. As noted above, other than alleging that McKeever sold "energy drinks," the Petition contains no other references to any alleged wrongful conduct on the part of McKeever.

18. Plaintiff cannot recover against McKeever because each and every claim asserted against McKeever is subject to dismissal under the Missouri Innocent Seller statute. Mo. Rev. Stat. § 537.762. This statute provides that:

> A defendant whose liability is based solely on his status as a seller in the stream of commerce may be dismissed from a products liability claim . . . . This section shall apply to any products liability claim in which another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had for plaintiff's claim.

Mo. Rev. Stat. § 537.762 (1-2). The Western District of Missouri, in *Spears v. Bayer Corp.*, analyzed the application of this statute in federal court and held:

> In *Gramex*, the Missouri Supreme Court considered the Innocent Seller statute and concluded that, while it might at first glance appear procedural, it possessed an inherent substantive public policy . . . . [T]he Innocent Seller statute is a law defining the state rights and obligations of retailers within Missouri. [This] conclusion [makes] application of the law obligatory upon the Court.

*Spears v. Bayer*, 2004 U.S. Dist. LEXIS 29732, *7, n2 (W.D. Mo), citing *Byrd v. Blue Ridge Rural Elec. Co-op, Inc.*, 356 U.S. 525, 535-37.

---
[2] *See* Affidavit of Jeff Blobaum, Chief Financial Officer of McKeever Enterprises, Inc., attached as **Exhibit B**.

7

19. Under the Innocent Seller doctrine, dismissal is proper if McKeever can establish (a) that its potential liability is based entirely on its status as a seller, and (b) that another defendant is properly before the court from whom total recovery may be sought. *See* Mo. Rev. Stat. 537.762 (1-2); *Spears* at *8. In *Spears*, a Western District of Missouri case, the plaintiff claimed to have suffered injuries from the use of cold medicine. Plaintiff sued the manufacturer and resident retailer in Missouri state court. Bayer removed on diversity jurisdiction grounds, claiming that the resident retailer was fraudulently joined. Plaintiff moved to remand the case to state court. The court in *Spears* <u>denied</u> plaintiff's motion to remand based on the Innocent Seller statute, and dismissed all allegations against the retailer, including strict liability, breach of warranty, and violation of the MMPA. The court held that "there is no allegation that [the retailer] knew of any defect or . . . . could have discovered any defect in the product[.] Based on . . . . [plaintiff's] own allegations, it is clear that any theory of recovery . . . . would be based solely on its status as a seller of the product in the stream of commerce." *Id.* at *9.

In *Thomas v. Brown and Williamson Tobacco Corp.*, 2006 U.S. Dist. LEXIS 28261 (W.D. Mo.), this court faced a similar issue. Plaintiff sued a cigarette manufacturer and the resident retailer in Missouri state court for wrongful death and fraudulent concealment. The manufacturer removed based on fraudulent joinder. As in *Spears*, the court denied plaintiff's motion to remand and dismissed the resident defendants:

> Under the applicable state law precedent that is available to this Court, the Missouri Defendants are not subject to suit under the Innocent Seller statute. A review of plaintiffs' Complaint in this case reveals that the Missouri Defendants' liability would be based upon the fact that they are a seller in the stream of commerce of the allegedly defective product. Neither of the Missouri Defendants manufactured cigarettes. Plus, the remaining Defendants in this case stated in their Notice of Removal that, although they deny the substance of plaintiffs' allegations, plaintiff would be able to make a full recovery from the product manufacturers without contribution from the Missouri Defendants.

8

*Thomas*, 2006 U.S. Dist. 28261 at *8-9.

Finally, in *Wichmann v. The Proctor & Gamble Manufacturing Company*, 2006 U.S. Dist. LEXIS 89407 (E.D. Mo.), plaintiff sued the manufacturer and resident retailer of tampons for alleged injuries related to Toxic Shock Syndrome (TSS). The manufacturer removed to federal court, claiming fraudulent joinder based on the Missouri Innocent Seller statute. In its motion to remand, plaintiffs argued that the retailer was not being sued "solely in its capacity as the seller, but rather that it is also liable to Plaintiffs in negligence because it failed to test or observe the manner of use of the tampons, and failed to advise and warn Plaintiffs of the risks of overnight use of the tampons which contained rayon as a component part." *Id.* at *7. The *Wichmann* Court rejected plaintiffs' argument for two reasons. First, after reviewing the relevant FDA regulations, the court held that plaintiffs are "attempting to impose a duty on the resident defendant which exceeds federal regulations." *Id.* at *8. Second—and of particular relevance to the present case—the court held that

> the allegations regarding [retailer's] duty *vis a vis* tampon testing and usage would require [retailer] to go beyond the federally required warnings (which are contained on the product packaging itself) and engage in highly scientific testing and experimentation. The absurdity of requiring a *grocer* to test the products it sells and report to its customers the risks of all of those products establishes the lack of a reasonable basis in fact or law of a duty owed by [retailer] to Plaintiffs. Without the requisite duty, there can be no negligence claim against [retailer]. *Cupp v. AMTRAK*, 138 S.W.3d 766, 771 (E.D. Mo. 2004).

*Id.* at *9.

20. In the present case, Plaintiff's claims against McKeever (even overlooking the fatal pleading defects) are based entirely on McKeever's status as a seller in the stream of commerce. Further, Monster Energy Company—the manufacturer of the drink at issue—is a party to this lawsuit and is fully capable of responding to Plaintiff's claims. Finally, although Monster denies the allegations in Plaintiff's Petition, and reserves all objections and defenses to

9

this claim, Plaintiff would be able to make a full recovery from Monster without contribution from McKeever. *See Thomas*, 2006 U.S. Dist. LEXIS at *9 [holding that a similar representation was sufficient to satisfy Mo. Rev. Stat. § 537.762(2)]. Under Section 537.762, therefore, dismissal of McKeever is appropriate, and its joinder in this action is fraudulent.

**The Amount in Controversy Exceeds $75,000**

21. The amount in controversy requirement is satisfied. Plaintiff seeks damages "*in excess of* $15,000." (Petition ¶ 8, emphasis added.) In addition, Plaintiff seeks compensatory damages for "[e]xpenses for doctors, hospitals, nurses, pharmaceuticals, and other reasonably required and medically necessary supplies and services." (*Id.* ¶¶ 38, 52, 61, 71, 81.) In addition, Plaintiff alleges that her husband "suffered serious and permanent physical injury, harm, damages and economic loss, and ultimately died." (*Id.* ¶¶ 39, 53, 62, 72, 82, 89.) Plaintiff also seeks wrongful death damages for "funeral expenses, mental anguish, suffering and bereavement both prior to and subsequent to the death of the deceased; loss of companionship, comfort, protection, care, attention, advice, counsel and guidance; loss of financial support and loss of services of the deceased[.]" (*Id.* ¶ 93.) Finally, Plaintiff seeks punitive damages. The amount in controversy may include punitive damages: (1) if they are recoverable as a matter of state law; and (2) it cannot be said to a legal certainty that plaintiff would not be entitled to recover the jurisdictional amount. *See Allison v. Security Benefit Life Ins. Co.*, 980 F.2d 1213 (8th Cir. 1992) (addressing punitive damages as part of amount in controversy). Here, the MMPA authorizes actual damages, punitive damages, and attorneys' fees. Mo. Rev. Stat. § 407.025. In addition, Missouri law authorizes punitive damages of up to five times the actual damages or $500,000, whichever is greater. *Id.* § 510.265. While Monster denies that Monster Energy,

10

Case 4:14-cv-00758-SRB   Document 1   Filed 08/22/14   Page 10 of 17

this claim, Plaintiff would be able to make a full recovery from Monster without contribution from McKeever. *See Thomas*, 2006 U.S. Dist. LEXIS at *9 [holding that a similar representation was sufficient to satisfy Mo. Rev. Stat. § 537.762(2)]. Under Section 537.762, therefore, dismissal of McKeever is appropriate, and its joinder in this action is fraudulent.

**The Amount in Controversy Exceeds $75,000**

21. The amount in controversy requirement is satisfied. Plaintiff seeks damages "*in excess of* $15,000." (Petition ¶ 8, emphasis added.) In addition, Plaintiff seeks compensatory damages for "[e]xpenses for doctors, hospitals, nurses, pharmaceuticals, and other reasonably required and medically necessary supplies and services." (*Id.* ¶¶ 38, 52, 61, 71, 81.) In addition, Plaintiff alleges that her husband "suffered serious and permanent physical injury, harm, damages and economic loss, and ultimately died." (*Id.* ¶¶ 39, 53, 62, 72, 82, 89.) Plaintiff also seeks wrongful death damages for "funeral expenses, mental anguish, suffering and bereavement both prior to and subsequent to the death of the deceased; loss of companionship, comfort, protection, care, attention, advice, counsel and guidance; loss of financial support and loss of services of the deceased[.]" (*Id.* ¶ 93.) Finally, Plaintiff seeks punitive damages. The amount in controversy may include punitive damages: (1) if they are recoverable as a matter of state law; and (2) it cannot be said to a legal certainty that plaintiff would not be entitled to recover the jurisdictional amount. *See Allison v. Security Benefit Life Ins. Co.*, 980 F.2d 1213 (8th Cir. 1992) (addressing punitive damages as part of amount in controversy). Here, the MMPA authorizes actual damages, punitive damages, and attorneys' fees. Mo. Rev. Stat. § 407.025. In addition, Missouri law authorizes punitive damages of up to five times the actual damages or $500,000, whichever is greater. *Id.* § 510.265. While Monster denies that Monster Energy,

Extra Strength with Nitrous Technology caused or contributed to Plaintiff's alleged injuries, in light of the seriousness of the injuries alleged in the Petition, and Plaintiff's claim for punitive damages, Plaintiff's Petition places more than $75,000 in controversy.

## REMOVAL BASED ON FEDERAL QUESTION JURISDICTION

22.     This Court has federal question jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 because the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable,* 545 U.S. at 314.  Each of the *Grable* requirements is satisfied here.

### Plaintiff's Claims Necessarily Raise and Actually Dispute FDA Regulations.

23.     The first *Grable* requirement is met because Plaintiff's claims necessarily raise and actually dispute several federal issues.  Plaintiff's Petition alleges:

- "Monster Energy contains and relies primarily upon massive amounts of caffeine, a substance known for imposing adverse health effects upon consumers" (Petition ¶15) — despite the fact that caffeine is Generally Regarded As Safe (GRAS) under federal regulations;

- "For years, Monster successfully avoided meaningful regulation of its product by the U.S. Food and Drug Administration.  By classifying 'MonsterEnergy' as a 'dietary supplement' — in other words, not a 'food' — Monster manufactured its 'Monster Energy' drinks without any restrictions on caffeine content." (Petition ¶ 20).  This allegation challenges the very heart of FDA's regulatory mandate, and suggests that dietary supplements are not

11

regulated, notwithstanding the comprehensive regulatory regime established under the Dietary Supplement Health and Education Act of 1994 (DSHEA), Pub. Law 103-417, 108 STAT. 4325;

- Monster Energy is inadequately labeled "because the packaging fails to disclose the caffeine content of the product," and the cans "utterly fail to provide adequate information as to the total caffeine of the product." (Petition ¶ 22). This allegation challenges FDA regulations under both DSHEA (for dietary supplements) and the Nutritional Labeling and Education Act (NLEA) (for beverages);

- Monster Energy drinks are allegedly unsafe because they contain "exorbitant levels of caffeine, taurine, and guarana," despite the fact that all of these ingredients are GRAS and are all assumed safe under DSHEA (shifting the burden solely to the FDA to determine that they are not safe); and

- In support of its claim for aggravating circumstances, Plaintiff alleges that Monster has "knowingly, intentionally, and deliberately marketed 'Monster Energy' as an 'Energy Supplement' so as to avoid limitations imposed upon soft drink and other beverage manufacturers by the U.S. Food and Drug Administration ('FDA') restricting the caffeine content of such soft drinks or beverages. In classifying 'Monster Energy' as an 'Energy Supplement,' [Monster] avoid[s] meaningful regulation by the FDA and use[s] amounts of caffeine in 'Monster Energy' that far exceeds such regulations imposed upon other beverages." (Petition ¶ 100).

In short, Plaintiff argues that Monster Energy drinks fail to comply with the federal GRAS regulations and other related FDA requirements, such as FDA's dietary supplement labeling guidelines. Monster, however, disputes Plaintiff's interpretation and application of GRAS, DSHEA, and NLEA, and contends that it is in compliance with FDA regulations.

Therefore, to decide this case on the merits, the Court must determine the proper scope, interpretation, and application of *federal* laws and regulations.

### Plaintiff's Claims Raise Substantial Federal Issues Regarding FDA's Uniform Application of Food Labeling and Safety Laws.

24. The second *Grable* requirement is met because Plaintiff's food labeling and safety claims present substantial questions of federal law. In determining whether a federal issue is substantial, courts examine whether the federal issue is "such an important issue of federal law that [it] belongs in a federal court." *Grable*, 545 U.S. at 315. Courts have found the following issues to be substantial: "those that directly affect the functioning of the federal government, those in an area reserved for exclusive jurisdiction, and those that impact a complex federal regulatory scheme." *Id.* at 314.

The scope and application of FDA's standards and regulations regarding dietary supplement and/or food labeling under DSHEA and NLEA satisfy the substantiality test. The scope and application of GRAS, dietary supplement labeling, and food and beverage labeling directly affects the functioning of FDA—the agency that regulates food safety and labeling—and would impact a complex federal regulatory scheme. *See Turek v. Gen. Mills, Inc.,* 662 F.3d 423, 426 (7th Cir. 2011) (purpose of the FDCA's regulatory scheme is to create uniformity across the states).

### Federal Jurisdiction Will Not Disturb the Balance of Federal and State Judicial Responsibilities.

25. Finally, the third *Grable* requirement is met because recognizing federal question jurisdiction in this case will not upset the federal-state balance. As discussed herein, the essence

13

of Plaintiff's Petition is that Monster Energy drinks are not GRAS under federal law, and that the labeling, despite complying with federal law, is somehow insufficient. Plaintiff seeks to enforce FDA's regulations through Missouri tort law, but a state law claim does not exist where it is "in substance (even if not in form) a claim for violation the FDCA — that is, when the state claim would not exist if the FDCA did not exist." *Riley v. Cordis Corp.,* 625 F. Supp. 2d 769, 777 (D. Minn. 2009) [*citing Buckman v. Pls.' Legal Comm.,* 531 U.S. 314, 352-53 (2001)]. Recognizing federal jurisdiction in this case will not affect the "congressionally approved balance of federal and state judicial responsibilities."*Grable*, 545 U.S. at 314.

### The Artful Pleading Doctrine Prevents Plaintiff from Avoiding Federal Question Jurisdiction.

26. Because Plaintiff's claims arise from federal standards, there is no alternative state-law theory under which Plaintiff might proceed. While Plaintiff purports to state her claim on Missouri tort law, her claims are in fact based on the federal GRAS standard, DSHEA, NLEA, and the FDCA. Thus, Plaintiff seeks "to build [her] edifice of state law claims upon a foundation comprised of [federal laws] and regulation." *Lippitt v. Raymond James Fin. Servs, Inc.* 340 F. 3d 1033, 1044-45 (9th Cir. 2003).

27. The Supreme Court has been careful to not articulate a "single, precise, all embracing" test for jurisdiction over federal issues embedded in state law claims. *Grable,* 545 U.S. at 314. As the Ninth Circuit has acknowledged, "no specific recipe exists for a court to alchemize a state claim into a federal claim—a court must look at a complex group of factors in any particular case to decide whether a state claim actually 'arises' under federal law." *Lippitt,* 340 F.3d at 1042-43; see also *Cnty. of Santa Clara v. Astra USA, Inc.,* 401 F. Supp. 2d 1022, 1025 (N.D. Cal. 2005) ("Section 1331 also confers jurisdiction when an issue of federal law

undergirds Plaintiff's claim.") Notwithstanding the lack of a "single, precise, all embracing test," this case meets the standards set forth in *Grable*: it raises a stated federal issue because Plaintiff is challenging the FDA's regulatory mandate under the FDCA, DSHEA, and NLEA; it involves a substantial issue because FDA has exclusive jurisdiction over the safety of dietary supplements; and it will not disturb the balance of federal and state judicial responsibilities because the complex regulatory scheme governing beverages and dietary supplements is already intended to create federal, uniform guidelines across the states. Federal question jurisdiction exists, and Monster's removal is appropriate.

## REMOVAL IS PROPER

28. No previous application has been made for the relief requested herein.

29. Under 28 U.S.C. § 1446 (b)(2)(A), "all defendants <u>who have been properly joined and served</u> must join in or consent to the removal of the action." (Emphasis) Because McKeever was fraudulently joined in an attempt to defeat diversity jurisdiction, it does not need to consent to Monster's removal to federal court. *See Bradley Timberland Res. v. Bradley Lumber Co.*, 712 F.3d 401, 405-406 (8th Cir. 2013) (consent to removal not required for defendant who is fraudulently joined to defeat diversity jurisdiction); *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 833 (8th Cir. 2002) (while ordinarily, all defendants must join in a removal petition, "nominal defendants, those against whom no real relief is sought, need not join.") (internal quotes omitted); *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) ("the rule of unanimity does not apply to nominal, unknown or fraudulently joined parties.") (internal quotes omitted). Nonetheless, out of an abundance of caution and without

15

waiving any defenses (including jurisdictional defenses) which are expressly reserved, attached hereto as **Exhibit C** is McKeever's Consent to Removal.

    30.    Monster will serve this notice on Plaintiff's counsel. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Circuit Court of Jackson County, Missouri at Kansas City.

    31.    This notice is being filed without prejudice to any and all objections and defenses of Monster.

    32.    Monster demands a trial by jury.

DATED: August 22, 2014

    /s/ Karrie J. Clinkinbeard
Casey O. Housley (MO Bar No. 48421)
chousley@armstrongteasdale.com
Karrie J. Clinkinbeard (MO Bar No. 51413)
kclinkinbeard@armstrongteasdale.com
**ARMSTRONG TEASDALE LLP**
2345 Grand Boulevard, Suite 1500
Kansas City, MO 64108
(816) 221-3420
(816) 221-0786 [fax]

Daniel J. Callahan (CA Bar No. 91490)
dcallahan@callahan-law.com
(*Will Apply Pro Hac Vice*)
Marc P. Miles (CA Bar No. 197741)
mmiles@callahan-law.com
(*Will Apply Pro Hac Vice*)
Kristy A. Schlesinger (CA Bar No. 221850)
kschlesinger@callahan-law.com
(*Will Apply Pro Hac Vice*)
Ryan J. Williams (CA Bar No. 228925)
rwilliams@callahan-law.com
(*Will Apply Pro Hac Vice*)
Brendan M. Ford (CA Bar No. 224333)
bford@callahan-law.com
(*Will Apply Pro Hac Vice*)
**CALLAHAN & BLAINE, APLC**
3 Hutton Centre Drive, Ninth Floor

Santa Ana, California 92707
(714) 241-4444
(714) 241-4445 [fax]

Attorneys for Defendants
MONSTER BEVERAGE CORPORATION
and MONSTER ENERGY COMPANY